# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT CONWAY, III,** : | CIVIL NO. 1:CV-07-1457 | |
| Plaintiff, : | | |
| : | **(Chief Judge Kane)** | |
| v. : | | |
| : | | |
| **WARDEN CAMERON LINDSAY, et al.,** : | | |
| Defendants : | | |

## MEMORANDUM

This Bivens[1] action pursuant to 28 U.S.C. § 1331 proceeds on a complaint filed by Robert Conway, III, ("Plaintiff"), an inmate incarcerated at the United States Penitentiary at Canaan (USP-Canaan), Pennsylvania. Named as Defendants are Senior United States Judge Richard A. Ensled, the Bureau of Prisons ("BOP"), D. Scott Dodrill, BOP Regional Director, and the following USP-Canaan employees: Cameron Lindsay, Warden; Kyle Lindsay, Unit Manager; Lieutenant Robert Kaszuba; and Harrell Watts, Prison Administrator.[2] Also named as Defendants are Jeffery Nickerson, a manager with the UCC Division of the Michigan Department of State, and Special Agents Belmarsh, Cole and DeAnda.[3] The claims in the complaint stem from Plaintiff's attempts to collect "government bonds," which he contends are

---

[1] Bivens v. Six Unnamed Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

[2] Defendants Ensled and the BOP were previously dismissed from this action. (Doc. No. 11.)

[3] Defendants Belmarsh, Cole and DeAnda have never been served with the complaint in this action. On October 3, 2008, the waivers of service were returned unexecuted with respect to each of these individuals noting that they could not be located. Plaintiff has never provided the Court with any further information as to where to serve these Defendants. Further, a Waiver of Service was returned executed with respect to Defendant Nickerson, and filed on July 30, 2008. Nickerson, however, has not filed a response to the complaint.

his property.  He contends that his constitutional rights were violated when he was placed in the SHU pending an investigation to recover the bonds.  He also alleges that Defendants interfered with his attempts to make filings with the government. Presently before the Court is a motion filed by Defendant Kyle Lindsay to strike a document filed by Plaintiff on November 13, 2008, entitled "Addendum - Formal Complaint" (Doc. No. 35).  Also pending is a motion to dismiss the complaint filed on behalf of Defendants Lindsay, Lindsay, Watts, Kaszuba and Dodrill. (Doc. No. 42.)  For the reasons that follow, both motions will be granted.

I.  BACKGROUND

In the complaint Plaintiff sets forth his attempts in or about January of 2007, to contact by letter Defendant Ensled and other public officials involved in his underlying criminal case.  In the letters, Plaintiff requests said officials to file certain tax forms including their 1040 and 1099 OID and 1096 forms, as well as provide him with their tax ID Numbers so he can provide this information to the Internal Revenue Service to collect government bonds which Plaintiff claims are his property.  On or about January 26, 2007, Ensled mailed Plaintiff an "Order Rejecting Pleading."  (Doc. No. 1, Compl. at 2.)

On or about February 14, 2007, Plaintiff was directed to report to Defendant Kaszuba in the Lieutenant's Office at USP-Canaan.  Upon his arrival, Defendant K. Lindsay questioned Plaintiff with respect to the letter received from Defendant Ensled concerning IRS forms, and asked him to explain what was going on.  Plaintiff states that he tried to explain how he was attempting to collect on bonds related to his underlying criminal action which he claims are his property, and total an amount of $4,550,000.00.  (Id. at 3.)

After speaking with Defendant and Dr. DiPala, Plaintiff was placed in the SHU by

2

Defendant Kaszuba of the Special Investigative Service ("SIS"), pending an investigation for fraudulent mail activities with respect to the recovery of the bonds. Plaintiff states that such confinement was a violation of his constitutional rights. He further claims that Defendant Lindsay threatened to prosecute Plaintiff to the fullest extent of the law due to such illegitimate UCC lien filing activity.

On or about March 30, 2007, Plaintiff states he filed a BP-9 Administrative Remedy to Defendant Warden Lindsay challenging his confinement in the SHU because he believed he had not violated any rules. Lindsay denied the request stating that an SIS investigation was taking place. About a month later, Plaintiff states he received a "frivolous filing form" from the IRS stating that no penalty would be assessed against him if he would drop his claim within thirty (30) days. (Id.) Plaintiff alleges he was later denied immediate release from the SHU by Defendant Dodrill pursuant to a BP-10 appeal he pursued.

On or about May 8, 2007, Plaintiff was issued an incident report charging him with Extortion/Fraud, Threatening Staff, Counterfeiting or Forging any Documentation & Mail Abuse. The following day, Plaintiff states he mailed a UCC-3 Financing Statement Amendment to Defendant Nickerson, requesting that security interest be registered with respect to all property belonging to "DEBTOR CONWAY, ROBERT." (Id.) When he did not hear back from the UCC Department, Plaintiff made an inquiry to Defendant Kaszuba. It is Plaintiff's position that the SIS held his UCC paperwork, and therefore prevented it from being mailed out. Plaintiff asserts that the UCC forms are important in protecting his property.

Based on the foregoing, Plaintiff contends Defendants have violated his constitutional rights to due process and to be free from cruel and unusual punishment when they confined him

in the SHU for exercising his right to free speech. He claims that Defendants Nickerson, Kaszuba and the government agents denied him access to the courts when they impeded his UCC filings. Plaintiff seeks declaratory, injunctive, compensatory and punitive relief.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. In reviewing a motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)(quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002). Although the court is generally limited in its review to the face of the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1997); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the plaintiff has an obligation to allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted). Furthermore, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, Id. at 1960. When evaluating a motion to dismiss, a court need not "credit a complaint's 'bald assertions' or 'legal conclusions.'" Evancho v. Fisher,

4

423 F.3d 347, 354-55 (3d Cir. 2005). Finally, when a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," Twombly, 127 S. Ct. at 1960, the complaint should be dismissed.

## III. DISCUSSION

### A. Motion to Strike Addendum

On November 13, 2008, Plaintiff submitted a document entitled "Addendum - Formal Complaint." (Doc. No. 31.) In this document it appears Plaintiff seeks to raise new claims with respect to a separate incident arising after the filing of the original complaint against Defendant Kyle Lindsay, as well as against new Defendants not previously named in the above-captioned matter.

Defendant Lindsay moves to strike the addendum on several grounds.[4] The first ground is Plaintiff's failure to seek leave of court if it is his intention to amend his complaint. Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Fed. R. Civ. P. 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

---

[4] The pending motion is filed only by Defendant Lindsay as he is the only Defendant named in the original complaint that Plaintiff seeks to raise new claims against in the proposed Addendum. The other new claims in the Addendum are all asserted against individuals not currently named Defendants in this action.

Plaintiff previously amended his complaint as of right when he added four (4) Defendants on September 16, 2008. (Doc. No. 23.) As such, leave of court is required before filing any amended complaint. Further, to the extent the "Addendum" is intended to be a supplemental pleading, leave is also required. Plaintiff has filed no such motion or brief in support thereof. Accordingly, the document can be stricken on this basis alone.

Defendant also maintains that any such attempt to supplement the complaint by Plaintiff is futile for the following reasons. In deciding whether to grant a motion to supplement, courts utilize the same standards as when evaluating a motion to amend the complaint. See Hassoun v. Cimmino, 126 F. Supp. 2d 353, 360 (D.N.J. 2000). The decision to grant a motion to amend falls within the sound discretion of the court. Foman v. Davis, 371 U.S. 178, 182 (1962). Leave may be denied where "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Frazer v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116-17 (3d Cir. 2003). It is also well established that a supplemental pleading cannot be used for the purpose of trying a new matter or a new cause of action. See Brown v. Lindsay, No. 07-CV-1299, 2008 WL 3874308, at *2 (M.D. Pa. Aug. 14, 2008).

In the instant case Defendant maintains that any supplementing of the complaint to add further claims against BOP staff members for interfering with his filing of UCC liens is futile because he is unable to state a legally cognizable cause of action. In his supporting brief, Defendant Lindsay sets forth recent Third Circuit Court of Appeals precedent finding that the confiscation of an inmate's legal materials concerning similar UCC filings could not state a viable claim of denial of access to the courts. See Monroe v. Beard, 536 F.3d 198, 206 (3d Cir.

6

2008). Further, the Third Circuit has found that a Pennsylvania state prison could sanction an inmate for the possession of UCC-related materials. See Edmonds v. Sobina, 296 Fed. Appx. 214 (3d Cir. 2008). As such, and as the Court will more fully address in evaluating Defendants' pending motion to dismiss, it is proper to strike the "Addendum" submitted by Plaintiff on the basis that any supplementation to add such claims is futile since they fail to state a legally cognizable cause of action. See Good v. Borough of Steelton, No. 06-CV-1736, 2008 WL 4454058, at *12 (3d Cir. Sept. 30, 2008)(denying leave to supplement complaint on basis of futility on basis that allegations, even if true, do not amount to a constitutional violation).[5] Accordingly, Defendant's motion to strike the "Addendum" will be granted.

### B. Motion to Dismiss

Because Plaintiff failed to file a brief in opposition to Defendants' motion to dismiss, the Court issued an order on March 10, 2009, directing him to do so. (Doc. No. 46.) He was afforded fifteen (15) additional days to submit his opposition to the motion, but he failed to do so. Although Defendants' motion will now be deemed unopposed, the court must nevertheless consider the merits of the motion in order to determine whether Plaintiff fails to state a claim upon which relief may be granted. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)(ruling that a motion to dismiss should not be granted simply because it is unopposed). The pending unopposed motion to dismiss filed on behalf of Defendants Dodrill, Kaszuba, Cameron Lindsay, Kyle Lindsay and Watts will now be addressed by the Court.

---

[5] Defendant also moves to strike the "Addendum" on the basis of failure to exhaust the claims raised therein. While Defendant's argument is well-taken, the Court will not engage in this analysis, as sufficient grounds have been established to warrant the granting of Defendant's motion to strike the "Addendum."

1.  **Lack of Personal Involvement**

Defendants first move to dismiss all claims set forth against Dodrill and Watts due to their lack of personal involvement in the alleged constitutional deprivations. A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983, and the same legal principles have been held to apply. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

To state a claim Plaintiff must allege that Defendant was personally involved in the alleged wrongful actions either by actual conduct, or knowledge of and acquiescence in the wrongful actions. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Defendants in "a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode, 845 F.2d at 1207. Thus, a mere linkage in the prison chain of command is not sufficient to demonstrate personal involvement. Rather, the requirement may be satisfied by a showing of "personal direction or of actual knowledge and acquiescence." Id. at 1207.

Plaintiff has failed to provide even the most basic of allegations that Defendants Dodrill and Watts were personally involved in the alleged constitutional deprivations.[6] The mere fact

---

[6] In fact, it does not appear that Watts is even mentioned by name or position at all within the body of the complaint.

that these Defendants hold supervisory positions at the prison is insufficient to form the basis of a Bivens claim. The supervisor must be personally involved in the alleged misconduct to be liable. While Plaintiff alleges that Defendant Dodrill denied Plaintiff's BP-10 appeal with regard to the issue of his confinement in the SHU, this does not make him personally involved in the alleged wrongdoing. Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir. 2006); Mincy v. Klem, No. 1:08-cv-0066, 2009 WL 331432, at *4 (M.D. Pa. Feb. 9, 2009). Accordingly, these Defendants will be dismissed for lack of personal involvement.

### 2. Denial of Due Process - Confinement in SHU

Throughout his complaint Plaintiff alleges that his due process rights were violated when he was placed into the SHU by Defendant Kaszuba on February 14, 2007, pending the BOP's investigation into Plaintiff's attempts to collect government bonds. In a BP-9 filed by Plaintiff on March 30, 2007, he claims that he should be released into the general population because he has not violated any prison rules. The BP-9 was denied because of the ongoing SIS investigation being conducted as to whether Plaintiff was engaged in fraudulent UCC-lien activities.

On May 8, 2007, Plaintiff was issued an incident report charging him with activities including Extortion/Fraud, Threatening a Staff Member and Counterfeiting or Forging any Documentation. On May 16, 2007, a BP-10 filed with Defendant Dodrill was denied. The instant complaint was filed on August 8, 2007.

It is well established that an inmate has no justifiable expectation that he will be incarcerated in a particular prison. Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Further, the United States Supreme Court has held that inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial

9

classification. Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). A federal inmate simply has no liberty interest in his security classification. See James v. Reno. 39 F. Supp.2d 37, 40 (D.D.C. 1999).

Further, Plaintiff has not alleged that his placement in the SHU has resulted in the type of atypical or significant hardship necessary to establish a constitutional violation under Sandin v. Conner, 515 U.S. 472, 484 (1995). Prison conditions do not impact a protected liberty interest unless the prison's action imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995). Confinement in administrative or punitive segregation, without more, will rarely be sufficient to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. Id. at 486. "The determination of what is 'atypical and significant' is based upon the range of conditions an inmate would reasonably expect to encounter." McKeithan v. Jones, 212 Fed. Appx. 129, 130 (3d Cir. 2007)(citing Asquith v. Dep't. of Corrections, 186 F.3d 407, 412 (3d Cir. 1999); Griffin v. Vaughn, 112 F.3d 703, 706, n.2 (3d Cir. 1997)). Finally, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues." Griffin, 112 F.3d at 709.

In deciding whether a protected liberty interest exists under Sandin, a federal court also considers the duration of the confinement and the condition of that confinement in relation to other prison conditions. Mitchell v. Horn, 317 F.3d 523, 532 (3d Cir. 2003)(citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000). In this case, Plaintiff was placed in the SHU for the legitimate penological reason of investigation of fraudulent mail activities. He was only housed there for approximately six (6) months when he filed this action. Further, he does not allege any

10

atypical and significant conditions existing in the SHU.

In Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997), the Court found that confinement of a prisoner in restrictive housing for fifteen (15) months did not implicate a constitutionally protected liberty interest. The Court explained that considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months are not uncommon.

In Fraise v. Terhune, 283 F.3d 506 (3d Cir. 2002), the Court of Appeals also found that the New Jersey Department of Corrections did not violate inmates' due process rights by failing to give them notice prior to placement in a restricted custody program since the inmates were not deprived of a protected liberty interest. See id. at 522-23. Further, the Middle District of Pennsylvania has repeatedly held that the placement of inmates into the Pennsylvania DOC's SMU program does not implicate their liberty interests. See Williams v. Wickiser, No. 1:CV-07-637, 2007 WL 3125019, at *9 & n.12 (M.D. Pa. Oct. 23, 2007)(Kane, C.J.). Fraise clearly demonstrates the Court's hesitancy to interfere with matters of prison administration and determinations as to which inmates should be confined in the SHU.

In another recent case, the Third Circuit Court of Appeals held that, where an inmate failed to allege that he was subjected to atypical conditions during his 930 day sentence to disciplinary confinement, he failed to show a deprivation of a cognizable liberty interest. Young v. Beard, 227 Fed. Appx. 138, 2007 WL 824172 (3d Cir. 2007). If a sentence of 930 days in disciplinary confinement does not implicate a liberty interest, then certainly Plaintiff's SHU confinement, without any allegations of atypical or significantly harsh conditions of that confinement in relation to other prison conditions, does not implicate a liberty interest. Thus, he

fails to state a claim upon which relief may be granted.

### 3. First Amendment

Plaintiff alleges that Defendants impeded his attempts to make filings with the government. Specifically, he alleges that his right to access to the courts was violated when Defendants held his UCC-3 paperwork, and impeded his UCC-3 filings. (Doc. No. 1, Compl. at 4-5.)

A prisoner's First Amendment rights include a right of access to courts. Lewis v. Casey, 518 U.S. 343, 349-56 (1996); Bounds v. Smith, 430 U.S. 817 (1977); Abdul-Akbar v. Watson, 4 F.3d 195, 202-03, 205 (3d Cir. 1993). However, the Supreme Court in Lewis has emphasized that a plaintiff alleging the denial of access to the courts must show "actual injury" - - such as dismissal of a suit or inability to file a complaint - - as a result of the purported unlawful acts in order to proceed with his suit. Lewis, 518 U.S. at 349-57. To establish actual injury, Plaintiff must be ". . . hindered in an effort to pursue a nonfrivolous legal claim." Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006) citing Lewis, 518 U.S. at 353. As aptly stated in Lewis,

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis, 518 U.S. at 355.

Defendants argue that Plaintiff fails to state an access to the courts claim in that Plaintiff's UCC-lien activities are neither legitimate legal filings nor protected by the First

12

Amendment. As support, Defendants cite to 18 U.S.C. § 1521, which is part of the Security Improvement Act of 2007. This provision, in relevant part, makes criminal the filing of any false lien or encumbrance against the real or personal property of an individual, as set forth in 18 U.S.C. § 1114, on account of the performance of official duties by that individual.[7]

In the recent case of Monroe v. Beard, 536 F.3d 198 (3d Cir. 2008), the Third Circuit Court of Appeals found that prison officials did not violate the First Amendment by seizing from inmates' personal property "publications and Uniform Commercial Code (UCC) materials." Id. at 202. The backdrop of the Monroe case is as follows, and is instructive in the instant matter. In July of 2005, the Pennsylvania Department of Corrections issued a memorandum to all its institutions declaring as "contraband" all UCC forms, documents relating to UCC filings, materials on redemption and copyrighting names, and publications regarding "redemption or lien filings." The possession of said materials violated the DOC policy on inmate mail privilege, DC-ADM 803, which prohibits writings that advocate, assist or are evidence of criminal activity or facilitate misconduct. This policy was issued as the direct result of reports in 2004 from various institutions that inmates were receiving information and documents concerning the filing of liens under the UCC, as well as prison officials' discovery of the filing of a fraudulent lien by an inmate against a state court judge and certain prison officials. Monroe, 536 F.3d at 203-04.

In addressing a lawsuit by a group of inmates challenging the above policy, the court in Monroe found that a viable claim of denial of access to the courts could not be stated in that all

---

[7] In federal criminal and civil prosecutions of inmates filing false and commercial liens against prosecutors, judges, corrections officers and other government employees, courts have uniformly declared those liens null and void. See United States v. Joiner, 418 F.3d 863 (8th Cir. 2005).

13

the inmates were denied when their materials were confiscated was material that could be used to file criminally fraudulent liens or frivolous civil lawsuits. Monroe at 206.

Further, in the recent decision of Edmonds v. Sobina, 296 Fed. Appx. 214 (3d Cir. 2008), the Third Circuit affirmed a federal district court's decision that UCC-related material was not legal work, and concluded that the DOC contraband policy was not unconstitutional.

In the instant case Plaintiff clearly alleges that the basis of his access to the courts claim is the Defendants' confiscation of his UCC-related documents as contraband. Even though the above cited cases deal with state inmates, said precedent is instructive. The Court finds that Plaintiff fails to state a First Amendment claim with respect to the confiscation of/interference with said UCC materials, as any restriction on Plaintiff's UCC filings was an incidental consequence of conviction and incarceration. Lewis, 518 U.S. at 355. As such, the unopposed motion to dismiss will be granted.[8] An appropriate Order follows.

---

[8] Although the motion to dismiss was filed only on behalf of Defendants Dodrill, Kaszuba, C. Lindsay, K. Lindsay and Watts, the claims set forth against Defendants Belmarsh, Cole, De Anda and Nickerson will also be dismissed for failure to state a claim based upon the same rationale as set forth above pursuant to the Court's screening ability as provided in 28 U.S.C. § 1915(e)(2)(B)(ii).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT CONWAY,  :  CIVIL NO. 1:CV-07-1457
    Plaintiff, :
 : (Chief Judge Kane)
    v. :
 :
WARDEN CAMERON LINDSAY, et al., :
    Defendants :

# ORDER

**NOW, THEREFORE, THIS 6th DAY OF JULY, 2009,** for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendant's Motion to Strike Addendum (Doc. No. 35) is **granted**. The Clerk of Court is directed to strike from the record and return to Plaintiff the "Addendum-Formal Complaint" submitted on November 13, 2008 (Doc. No. 31).

2. The motion to dismiss filed by Defendants Dodrill, Kaszuba, Lindsay, Lindsay and Watts (Doc. No. 42) is **granted,** and all claims set forth against these Defendants are dismissed in their entirety.

3. All claims set forth against Defendants Belmarsh, Cole, De Anda and Nickerson are **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915 (e) (2)(B)(ii).

4. The Clerk of Court is directed to **close this case**.

5. Any appeal from this order is deemed frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

                                        S/ Yvette Kane
                                        YVETTE KANE, Chief Judge
                                        Middle District of Pennsylvania